**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**JOHN R. LYON III,** *derivatively on behalf of AMC Entertainment Holdings, Inc*,

            **Plaintiff,**

         -against-

**ADAM M. ARON, ET AL.,**

            **Defendants.**

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/21/2023

**21-cv-07940-ALC**

<u>**OPINION AND ORDER**</u>

**ANDREW L. CARTER, United States District Judge:**

    Plaintiff John R. Lyon II, a shareholder of nominal defendant AMC Entertainment Holdings, Inc. ("AMC" or the "Company") brings a derivative action on the Company's behalf related to a litigation demand (the "Demand") that Plaintiff made on AMC's board of directors (the "Board") to investigate claims belonging to AMC arising out of the allegations in the consolidated securities class action that settled on February 14, 2022, captioned *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entertainment Holdings, Inc., et al.,* No. 1:18-cv-00299-AJN (S.D.N.Y.) (the "Securities Action"). Plaintiff sues Defendants Adam M. Aron, Craig R. Ramsey, Chris A. Cox, Lincoln Zhang, Jack Q. Gao, Mao Jun ("John") Zeng, Anthony J. Saich, Lloyd L. Hill, Gary F. Locke, Howard W. Koch, Jr., Kathleen M. Pawlus, Philip Lader, Lee E. Wittlinger, and Adam J. Sussman (collectively, the "Individual Defendants," together with AMC, "Defendants"). Defendants now move to dismiss the Verified Shareholder Derivative Complaint ("Complaint") for *forum non conveniens* and under Federal Rules of Civil Procedure 12(b)(6) and 23.1. For the reasons discussed below, Defendants' motion to dismiss is **GRANTED.**

**BACKGROUND**

I. **Procedural Background**

Plaintiff filed the Complaint on September 23, 2021. ECF No. 1. Plaintiff alleges that this stockholder derivative action seeks to remedy "fraud and other wrongdoing committed by AMC's current and former directors, officers, and controlling stockholder in connection with the Company's acquisition and failed integration of Carmike Cinemas ("Carmike"), and numerous false and misleading statements and omissions related thereto which were designed to hide such information from the public." Compl. ¶ 1. Defendants filed the instant motion to dismiss and supporting memorandum and declaration on January 14, 2022. ECF Nos. 64-66. Plaintiff filed his opposition on March 11, 2022 ("Opp."). ECF No. 74. The Defendants' reply was filed on May 13, 2022 ("Reply"). ECF No. 76.

This matter was initially assigned to the Honorable Alison J. Nathan, who presided over the related Securities Action. *See* Securities Action, No. 1:18-cv-00299-AJN. On April 7, 2022 this matter was reassigned to me. The motion is deemed fully briefed. After careful consideration, Defendants' motion to dismiss is **GRANTED.**

II. **Factual Background**

The following facts are taken from the allegations contained in Plaintiff's Complaint, which are presumed to be true for purposes of this motion to dismiss. Additionally, the Second Circuit "ha[s] often held that material that is a matter of public record may be considered in a motion to dismiss." *Byrd v. City of New York*, 2005 WL 1349876, at *1 (2d Cir. June 8, 2005). Moreover, a district court may "take judicial notice of the contents of relevant public disclosure documents required to be filed with the SEC as facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

### A. The Parties

Plaintiff John R. Lyon III is a current AMC stockholder who has continuously owned AMC stock since March 2015. Compl. ¶ 25. AMC is a Delaware corporation headquartered in Leawood, Kansas. Id. ¶ 26. AMC "owns, operates, or has interests in theaters located throughout the United States and Europe." *Id.*

Defendant Adam A. Aron ("Aron") has served as the Company's CEO and President and as a member of the Board since January 2016. *Id.* ¶ 27. Defendant Craig R. Ramsey ("Ramsey") served as the Company's CFO from June 2007 until he retired in February 2020. *Id.* ¶ 28. Defendant Chris A. Cox ("Cox") has served as the Company's Senior Vice President and Chief Accounting Officer since June 2010. *Id.* ¶ 29. Defendants Howard W. Koch, Jr. ("Koch"), Philip Lader ("Lader"), Gary F. Locke ("Locke"), Kathleen M. Pawlus ("Pawlus"), Anthony J. Saich ("Saich"), Adam J. Sussman ("Sussman"), and Lee E. Wittlinger ("Wittlinger") serve as members of the Board. *Id.* ¶¶ 30, 32-42. Defendant Jack Q. Gao ("Gao") served as a member of the Board from September 2015 until his resignation on October 27, 2017. *Id.* ¶ 31. Defendant Lloyd L. Hill ("Hill") served as a member of the Board until his resignation on March 6, 2020. *Id.* 32; *see* Ex. A to Mot., ECF No. 66-1 at 2. Defendants John Zeng and Lincoln Zhang served as members of the Board until their resignations on July 15 and July 20, 2021, respectively. *See* Ex. B to Mot., ECF No. 66-2 at 2.

Lader and Wittlinger also serve as members of the independent committee of the Board charged with investigating the Demand and making a recommendation to the full Board with respect to whether the actions demanded (or any other action with respect to the subject matter of the Demand) would be in the best interests of AMC and its stockholders (the "Committee"). *Id.* ¶¶

38-39. Defendants Aron, Ramsey, Cox, Zhang, Gao, Zeng, Saich, Hill, Locke, Koch, and Pawlus are named defendants in the Securities Action. *Id*. ¶ 41.

### B. Plaintiff's Substantive Allegations

AMC owns and operates movie theaters internationally. Compl. ¶ 60. In 2011, recognizing a need to modernize, AMC began a project to replace existing seats with electric recliners and improve its lobbies and technologies, at a cost of approximately $5 million per theater. *Id*. ¶ 64. AMC eventually went public in December 2013, and the Company's stock now trades on the NYSE under the symbol "AMC." *Id*. ¶ 35.

In March of 2016, AMC announced its acquisition of Carmike, a regional theater chain that served rural communities, for $852 million. *Id*. ¶ 45. Plaintiff alleges that AMC had previously considered acquiring the chain in 2014, but then-existing leadership became aware of material issues with Carmike's infrastructure and aborted the merger, calling Carmike a "lemon." *Id*. ¶¶ 46, 88. In the second half of 2016, AMC acquired the European chain Odeon, for $1.2 billion in total consideration, doubling its debt load to $6.6 billion. *Id*. ¶¶ 47-48. Then, in March of 2017, it acquired another European chain, Nordic, for $964 million in cash. *Id*.

Plaintiff alleges that to offset the massive debt, the Company announced that it would be issuing shares in a secondary public offering (the "SPO"). *Id*. ¶ 50. The SPO led to net proceeds of $618 million. *Id*. Plaintiff alleges that these gains were realized, however, in part due to false and misleading statements touting AMC's acquisitions and omitting critical information such as that: (i) Carmike's lack of investment in its theaters caused them to be in a state of significant disrepair, (ii) AMC had not been able to maintain Carmike's loyalty program after the acquisition, and (iii) Odeon and Nordic perennially had disastrously slow summer seasons. *Id*. ¶ 51.

On August 1, 2017, the Company announced preliminary financial results from the second quarter of 2017 ("Q2"), estimating total revenues of $1.2 billion and a net loss in the range of $178.5 to $174.5 million. *Id*. ¶ 107. In response, the price of AMC common stock plummeted nearly 27%, falling from $20.80 per share on August 1, 2017 to $15.20 per share on August 2, 2017. *Id.* ¶ 108.

During an August 4, 2017 conference call, Defendant Aron commented that the quarter was "simply a bust," highlighting several reasons for the Company's poor results, including, as he admitted for the first time, that "Q2, seasonally, is often the smallest quarter of the year in Europe." *Id*. ¶ 109. When a securities analyst asked if there was "a reason why [they] weren't able to disclose [the seasonality of AMC's international business]," Plaintiff alleges that Defendant Aron falsely stated that AMC did not disclose the information because international operations were accounted for under international accounting standards. *Id.*

Defendant Aron also stated that Carmike's performance was a major contributor to AMC's poor 2017 second quarter results. *Id.* ¶ 110. He explained that in the second quarter of 2017, box office results across the United States were down 4.4% while, in contrast, admissions revenues at legacy AMC theaters—largely renovated with new reclining seats—were down only 3.1%. However, the newly-acquired Carmike theaters suffered an extreme 11.3% revenue decline during the second quarter—nearly triple the national average. *Id.* With respect to AMC's inability to retain or convert Carmike's loyalty program members, and its failure to implement automatic programs to do this because they were too expensive, Defendant Aron admitted:

> When Carmike was handed over to us on December 21, only 200,000 individuals from their loyalty program joined our loyalty program. Even though, at the same time, AMC has over 9 million people from our loyalty program coming – stemming out of the – by then, it would have been about 7 million in the loyalty program. ***So we've had to start the loyalty program essentially over from scratch.***

5

*Id*. ¶¶ 99, 113.

During the Q&A session, Defendant Aron explained that Carmike's poor 2017 second quarter performance resulted from "literally six" different issues that had been having a material adverse effect on Carmike's operations and patron attendance, which AMC estimated would take until at least 2018 to resolve. *Id*. ¶ 111. According to Defendant Aron, these issues included AMC's inability to retain or convert Carmike's loyalty program members after the acquisition. *Id.*

Aron further stated that Carmike's poor performance was due to the fact that many of Carmike's theaters were badly in need of renovation and had suffered from years of delayed modernization (for example, by adding reclining seats) and underinvestment, and disclosed that Carmike "didn't do very much" to modernize its circuit after it put itself under contract to be sold. "And so the circuit essentially went on dead stop around April-ish of '16." *Id*. ¶ 111. Plaintiff alleges that AMC's Board-level documents confirm that Board members were well aware of the state of Carmike's theaters prior to the Carmike acquisition and had already planned/budgeted for renovations. *Id*. ¶ 112. Particularly, documents detailing the maintenance requirements and quality of the Carmike facilities as well as AMC's renovation plans for certain Carmike theaters was known or recklessly ignored by Defendants, and Defendants Hill, Koch Locke, Pawlus, Saich, Zeng, and Zhang possessed actual knowledge regarding these issues. *Id.*

### C. The Related Securities Action and the Litigation Demand

Many of Plaintiff's allegations are alleged in the operative complaint filed in the related Securities Action. *See* Securities Action, Second Amended Compl. ¶¶ 5-7, 15-18, 20-25, ECF No. 116. The Securities Action contends that certain of AMC's public disclosures concerning the Acquisitions and the SPO contained false or misleading statements and asserts claims under both the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the

6

"Exchange Act"). *Id.* ¶¶ 2-26. Defendants Aron, Ramsey, Cox, Gao, Hill, Locke, Koch, Pawlus, Saich, Zeng, and Zhang are also named as defendants in the Securities Action. *Id.* ¶¶ 34-36, 38.

On September 23, 2019, Judge Nathan granted in part and denied in part motions to dismiss filed by AMC and the other defendants in the Securities Action. *Haw. Structural Ironworkers Pension Tr. Fund v. AMC Ent. Holdings, Inc.,* 422 F. Supp. 3d 821, 831 (S.D.N.Y. 2019). On September 3, 2021, the parties to the related Securities Action reached an agreement in principle to settle that action. Securities Action, ECF No. 206. On November 1, 2021, the plaintiffs in the related Securities Action filed with the Court the parties' Stipulation and Agreement of Settlement (the "Settlement Agreement"), which memorialized the settlement. Securities Action, ECF. No. 214-1. The Court approved the Settlement Agreement on February 14, 2023. Securities Action, ECF No. 229.

On July 25, 2020, Plaintiff sent the Demand to the Board. Compl. ¶ 119. Plaintiff demanded the Board to conduct a "completely independent internal investigation" and "undertake a comprehensive review and overhaul of the Company's corporate governance." *Id.*; ECF No. 1-1.

In its September 30, 2020 response to Plaintiff, the Board explained that it had decided that pursuing his Demand was not in the Company's best interest for "substantially the same reasons" the Board had decided not to pursue a prior litigation demand brought by another stockholder, Harry Shute, and incorporated by reference its response to Mr. Shute's Demand ("Shute Response"). Compl., Ex. 5 ("Sept. 30, 2020 Ltr."), ECF No. 1-5 at 6-10; Compl. ¶ 123. The Shute Response stated that AMC had formed a demand committee ("Committee") comprised of Defendants Lader and Wittlinger, who retained Ross Aronstam & Moritz ("Committee Counsel") as advisors and explained that RAM had conducted a "fact interview of AMC counsel," who, together with the DC, had considered (i) the likelihood of success of the demanded litigation, (ii)

7

the costs of pursuing the demanded action, and (iii) the potential impact that pursuing the demanded litigation might have on the Securities Class Action. Sept. 30, 2020 Ltr. at 7-8. The September 30 letter provided that "[f]ollowing discussion, the Committee determined that pursuing the Lyon Demand at this time would not be in the best interests of the Company or its stockholders for substantially the same reasons that the Board decided not to pursue the Shute Demand" (namely, that it could "adversely impact[] the Company's defense of the Securities Action"), that "[t]he Committee presented its recommendations to the Board," and that "the Board voted unanimously not to pursue the Lyon Demand at this time." *Id*. at 3-4.

The Shute Response further acknowledged that (i) the Committee "had not investigated the underlying merits of the [Securities Class Action] at the heart of the Demand," (ii) the Company would likely have to advance defense costs of directors and officers, and (iii) the Company was "currently navigating" a "troubling financial situation." *Id.* at 8. The Committee also "recognized. . . that it may be appropriate. . . to revisit the demanded litigation after the Securities [Class] Action is resolved." *Id.* at 9.

On October 12, 2020, Plaintiff's counsel sought clarification as to "whether the Committee and the Board have merely deferred making a decision regarding the Litigation Demand until after resolution of the Securities Class Action, or whether they have outright rejected the Litigation Demand at this time." Compl. Ex. 6, ECF No. 1-6 at 2. On November 10, 2020, Committee counsel responded to Plaintiff's counsel that the Board had "not ruled out the possibility of revisiting the demanded litigation in the future, but has deferred that decision (and the possibility of a costly and robust inquiry into the underlying merits of the central securities allegations in the Demand) until after final resolution of the [Securities Action]." Compl. Ex. 7, ECF No. 1-7 at 2. Committee

8

Counsel also enclosed a confidentiality agreement (the "Confidentiality Agreement"). Compl. ¶ 125.

The Confidentiality Agreement provides that "[i]f [Plaintiff] determines to commence a lawsuit concerning the subject matter of the Demand, [Plaintiff] and [Plaintiff's] Counsel shall comply with Article IX of the Company's bylaws." The Confidentiality Agreement then quotes Article IX in full:

> Unless the Corporation consents in writing to the selection of an alternative forum, *the Court of Chancery of the State of Delaware shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders*, (iii) any action asserting a claim arising pursuant to any provision of the DGCL or the Certificate of Incorporation or Bylaws, or (iv) any action asserting a claim against the Corporation governed by the internal affairs doctrine. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article IX.

Compl. Ex. 7, ECF No. 1-7 at ¶ 5 (emphasis added).

On September 8, 2021, Plaintiff sent a letter to Committee Counsel stating: (i) "[w]e are now aware that the Plaintiffs in the Securities Class Action and the Company reached an agreement to resolve the matter on September 2, 2021"; (ii) "[w]e demand an *immediate* update on the status of the Committee and the Board's consideration of the Litigation Demand"; and (iii) "the Litigation Demand is now ripe for consideration." Compl. Ex. 9, ECF No. 1-9 at 2 (emphasis in original); Compl. ¶ 128.

Plaintiff alleges that he received no indication that the Company was intending to pursue his Demand further, so Plaintiff filed his Complaint on September 23, 2021. Plaintiff explains that "[b]ecause the Board and Committee have constructively and wrongfully refused the Litigation Demand, Plaintiff now commences this derivative action in order to protect the Company, rectify

9

the wrongs detailed herein, and hold the wrongdoers accountable for the damages they caused AMC." *Id.* ¶ 152.

## LEGAL STANDARD

### I.     Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## II.     Rule 23.1

Rule 23.1 of the Federal Rules of Civil Procedure requires a complaint in a derivative action to "state with particularity . . . any effort by the plaintiff to obtain the desired action from the directors [i.e. a pre-suit demand upon the corporation] . . . and . . . the reasons for not obtaining the action or making the effort." Fed. R. Civ. P. 23.1(b)(3). Although Rule 23.1 sets forth the pleading standard for federal court, the substance of the demand requirement is a function of state law—here, Delaware law. *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 234 (2d Cir. 2015).

Under Delaware law, "allegations of wrongful refusal are reviewed under the business-judgment rule, which creates a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Id*. (internal quotations omitted); *Spiegel v. Buntrock*, 571 A.2d 767, 772–73 (Del. 1990) ("A basic principle of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."). "The decision to bring a lawsuit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation." *Spiegel*, A.2d at 773. "Rule 23.1 requires that a stockholder wishing to bring a derivative action first demand that the board of directors take action." *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, No. CV 2017-0341-KSJM, 2019 WL 549938, at *5 (Del. Ch. Feb. 12, 2019). If a plaintiff chooses not to make a demand, the stockholder must plead with particularity why it would have been futile to present the matter to the board. *Id*. "Of the two potential routes presented by Rule 23.1—pleading demand excusal with particularity or making a pre-suit demand—the former is a steep road, but the latter is 'steeper yet.'" *Id*.

11

### III.     *Forum Non Conveniens*

The Second Circuit has "recognized that when a defendant moves to dismiss on the ground of *forum non conveniens*, courts assess: (1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum. *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019) (citing *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 153 (2d Cir. 2005)). However, when the parties have contractually selected a forum, "the forum selection clause 'substantial[ly] modifi[es]' the *forum non conveniens* doctrine and the 'usual tilt in favor of the plaintiff's choice of forum gives way to a presumption in favor of the contractually selected forum.'" *Id*. (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 218 (2d Cir. 2014)).

A district court must consider three factors in determining whether the presumption of enforceability applies to a forum selection clause: whether (1) the clause was reasonably communicated to the party resisting its enforcement; (2) the clause is mandatory or permissive; and (3) the claims and parties to the dispute are subject to the clause. *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 721 (2d Cir. 2013) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007)). If the court "concludes that the presumption applies, it must then consider a fourth factor—whether the presumption of enforceability has been properly rebutted by 'a sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Fasano*, 921 F.3d at 336 (quoting *Phillips*, 494 F.3d at 384).

## DISCUSSION

Plaintiff brings claims for (1) breach of fiduciary duty against the Individual Defendants; (2) waste of corporate assets against the Individual Defendants; (3) unjust enrichment/constructive

trust against the Individual Defendants; and (4) Contribution and Indemnification pursuant to Section 10(b) and 21D of the Exchange Act against Defendants Aron, Ramsey, Cox, Zhang, Gao, Zeng, Saich, Hill, Lock, Koch, and Pawlus.

Defendants argue that the Complaint should be dismissed in its entirety for three independent reasons. First, the Complaint should be dismissed for *forum non conveniens* based on the forum selection clause described in the Confidential Agreement and in the Company's bylaws. Second, the Complaint should be dismissed for failure to satisfy Rule 23.1. Third, the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).

The Court will first address Defendants' 12(b)(6) arguments. As to Plaintiff's contribution claim, Plaintiff explains that Defendants Aron, Ramsey, Cox, Zhang, Gao, Zeng, Saich, Hill, Lock, Koch, and Pawlus are named as defendants in the related Securities Action, and their conduct "has exposed the Company to significant liability under various federal securities laws by their disloyal acts." Compl. ¶ 172. Plaintiff argues that if AMC is found liable for violating the federal securities laws, the Company's liability will arise in whole or in part from the intentional, knowing, or reckless acts or omissions of these Defendants who have caused the Company to suffer substantial harm through their disloyal acts. *Id*. ¶ 173. Therefore, Plaintiff alleges that the Company is entitled to contribution and indemnification from these Defendants in connection with all claims that have been or may be asserted against the Company by virtue of their wrongdoing.

This claim is brought pursuant to Section 10(b) of the Exchange Act, which provides for a "private right of action for contribution, and Section 21D of the [PSLRA, which] . . . governs the application of any private right for contribution asserted pursuant to the Exchange Act." *DiBattista v. Greco*, No. CV 20-590-RGA, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021), *report and recommendation adopted*, No. CV 20-590-RGA, 2021 WL 5061720 (D. Del. Feb. 17, 2021)

(quoting *Lemon Bay Partners LLP v. Hammonds*, C.A. No. 05-327 GMS, 2007 WL 1830899, at *4 (D. Del. June 26, 2007)). Under Section 21D, Plaintiff only has a right to contribution if "final judgment is entered" in the Securities Action against the Defendants named in the contribution claim and if the trier of fact "specifically determines that [those Defendants] knowingly committed a violation of the securities laws." *Id* (quoting 15 U.S.C. § 78u-4(f)(2)(A)). Therefore, "a contributions claim against the settling parties would be barred." *Id*. (citing *Pall v. KPMG, LLP*, Civ. No. 3:03CV00842(AWT), 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006)).

Here, the Securities Action settlement has been approved and it provides that all of the defendants in the Securities Action "have denied, and continue to deny, each and every claim and contention alleged in the Action and affirm that they have acted properly and lawfully at all times." Securities Action, ECF No. 214-1. Additionally, the Settlement Agreement makes clear that AMC's insurers are funding the settlement in its entirety. *Id*. Therefore, there will be no AMC liability to which any of the Individual Defendants could contribute or for which they could indemnify AMC. Thus, Plaintiff's contribution claim must be dismissed.

Here, subject matter jurisdiction is premised upon a federal question, 28 U.S.C. § 1331, and principles of supplemental jurisdiction, 28 U.S.C. § 1367(a). Plaintiff requests that, if the Court dismisses his sole federal claim, the Court should still exercise supplemental jurisdiction over Plaintiff's state law claims. Opp. at 24. Plaintiff makes no argument as to whether this Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332.

The Court declines to exercise jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"). Because the Court dismisses Plaintiff's sole federal claim, the Court declines to exercise

supplemental jurisdiction over Plaintiff's state law claims. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.").

The exercise of supplemental jurisdiction "is left to the discretion of the district court." *First Capital Asset Mgmt., Inc. v. Saintwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). A court may balance "several factors, including considerations of judicial economy, convenience, and fairness to litigants." *Id.* at 183 (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)). The Court acknowledges Plaintiff's argument that the related Securities Action was litigated in this District; therefore, this derivative suit should also be litigated here. However, the Court does not believe it would be unfair for the Plaintiff to bring his state court claims before the Delaware State Court of Chancery. Additionally, although this Court gives no opinion as to the enforceability of the forum selection clause contained in the Confidentiality Agreement signed by Plaintiff and in the Company's bylaws, it is evident Plaintiff was on notice that the parties ostensibly had selected a state forum for, at minimum, future derivative suit based on state law claims. Finally, as to judicial economy, the parties in this instant matter have only briefed Defendants' motion to dismiss, and therefore this discretionary factor does not weigh in favor of supplemental jurisdiction.

Because the Court grants Defendants' motion based on their Rule 12(b)(6) arguments, the Court will not consider the arguments based on the forum selection clause, *forum non conveniens*, or Rule 23.1.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. The Clerk of the Court is respectfully directed to terminate ECF No. 64.

**SO ORDERED.**

Dated:   **March 21, 2023**
         **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**